UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRED E. CARTER, JR.,

        Petitioner,

v.                                 Case No. 3:04-cv-76-J-12HTS

JAMES CROSBY, etc.;
et al.,

        Respondents.

---

**ORDER**

**I. Status**

Petitioner Fred E. Carter, Jr., initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on February 5, 2004.[1] Petitioner challenges a 2000 state court (Duval County, Florida) judgment of conviction for manslaughter with a weapon on one ground: ineffective assistance of counsel for failing to advise him of the availability of a jury instruction on the independent act doctrine. Petition at 5.

---

[1] The Petition (Doc. #1) was filed in this Court on February 5, 2004; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner signed the Petition and handed it to prison authorities for mailing to this Court (February 2, 2004). See Houston v. Lack, 487 U.S. 266, 276 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his state court filings when calculating the one-year limitation period under 28 U.S.C. § 2244(d).

Respondents contend that Petitioner has not complied with the one-year period of limitation as set forth in this subsection. <u>See</u> Respondents' Answer/Response to Order to Show Cause (Doc. #13).[2] Petitioner was given admonitions and a time-frame to respond to the Response. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #10). Petitioner has responded.

## II. One-Year Period of Limitation

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA). This law amended 28 U.S.C. § 2244 by adding the following new subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2] The Court will hereinafter refer to Respondents' exhibits as "Ex."

2

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Petitioner Fred Carter was originally charged, by Information, with second degree murder and armed robbery and later was indicted for first degree murder and armed robbery. Ex. A1 at 8-12. On October 2, 2000, Petitioner Carter entered a plea of nolo contendere to the lesser offense of manslaughter with the use of a weapon, and the State agreed to a thirty (30) year cap on imprisonment and dropped the second charge. Id. at 13. At a plea hearing, the trial court accepted the plea. Id. at 31-46. On November 2, 2000, Petitioner Carter was adjudicated and sentenced to thirty (30) years of imprisonment. Id. at 15-19; http://www.dc.state.fl.us/ActiveInmates (Florida Department of Corrections website).

On appeal, appointed counsel filed an Anders[3] brief and moved that Petitioner be allowed to file a *pro se* brief. Ex. A2; Ex. A3. The appellate court granted the motion and directed that the State would not be required to file a brief, pending further order of the court. Ex. A4; Ex. A5. By *pro se* notice, Petitioner voluntarily dismissed his direct appeal, reserving the possibility of collateral attack. Ex. A6. Counsel filed a corresponding notice of voluntary dismissal. Ex. A7. The appeal was dismissed on April 10, 2001. Ex. A8.

On April 13, 2001, Petitioner filed a motion for post conviction relief. Ex. B1 at 1-10. The motion was amended on or about April 23, 2001. Id. at 12-23. On May 3, 2002, the trial court denied the motion for post conviction relief. Id. at 24-49. Petitioner filed a notice of appeal on July 8, 2002 (dated July 2, 2002). Id. at 50.

On August 14, 2002, the appellate court issued an order for Petitioner to show cause why the appeal should not be dismissed as untimely filed. Ex. B2. On August 22, 2002, Petitioner responded (Ex. B3), and the appeal was dismissed on October 4, 2002, citing Palma v. State, 783 So.2d 1120 (Fla. 1st DCA 2001) (dismissing the appeal for lack of jurisdiction without prejudice to appellant's right to file a petition for belated appeal with the appellate court). Ex. B4. The mandate issued on January 2, 2003. Ex. B5.

---

[3] Anders v. California, 386 U.S. 738 (1967).

4

On January 30, 2003, Petitioner petitioned the appellate court for a belated appeal. Ex. C1. The State responded, stating:

> The order on which belated appeal is sought was issued on 3 May 2002. The copy provided to the state indicates that a copy was provided to the defendant but shows a mailing address for a Eddie James Hill in the federal correctional system. This seems to indicate that the order was not properly provided to the petitioner. Accordingly, the state does not object to a belated appeal.

Ex. C2; see Ex. B1 at 27. A belated appeal was granted on May 9, 2003. Ex. C3. The mandate issued on May 28, 2003. Ex. C4.

The appellate court's May 28, 2003, mandate operated as a notice of appeal. Ex. D1 at 51-52. Petitioner filed a *pro se* brief. Ex. D2. The State gave notice that it would not file an answer brief. Ex. D3. On September 15, 2003, the appellate court per curiam affirmed. Ex. D4. Petitioner moved for a rehearing, which was denied. Ex. D5; Ex. D6. The mandate issued on November 4, 2003. Ex. D7.

Even assuming an untimely filing of the Petition in this Court, Petitioner is entitled to equitable tolling[4] since the trial court's order denying the motion for post conviction was mis-mailed

---

[4] Equitable tolling is to be applied when "'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling. Diaz v. Sec'y for the Dep't of Corr., 362 F.3d 698, 700-01 (11th Cir. 2004) (per curiam).

to another prisoner (see Ex. B1 at 27; Ex. C2), which precluded Petitioner from seeking a timely appeal. Therefore, this Court will not dismiss the case for untimeliness, but rather will review the merits of the Petition.

### III. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).

### IV. STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-

6

132, 110 Stat. 1214. Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:
>
>> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits

> in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d)(1)-(2).
>
> AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact. Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that

8

the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).
>
> . . . .
>
> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In

9

> deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in Williams that an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Williams, 529 U.S. at 411, 120 S.Ct. at 1522 (O'Connor, J., concurring)).

Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore,

AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).

11

The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .
>
> A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the

12

> outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

Van Poyck v. Florida Dep't of Corr., 290 F.3d at 1322-23.

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland, 466 U.S. at 687).

In order to succeed on an ineffective assistance of trial counsel claim concerning a plea, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness (deficient performance); and, (2) a reasonable probability that, but for counsel's unprofessional errors, he would not have entered the plea and would have insisted on proceeding to trial (prejudice). See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985) (extending the test adopted in Strickland to cases involving guilty pleas); United States v. Pease, 240 F.3d 938, 941 (11th Cir.), cert. denied, 534 U.S. 967 (2001); Holmes v. United States, 876 F.2d 1545, 1551 (11th Cir. 1989).

13

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See Hill v. Lockhart, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); see Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting Strickland v.

14

>  Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

### VI. Findings of Fact and Conclusions of Law

As previously stated, Petitioner's sole ground for habeas corpus relief is as follow: ineffective assistance of counsel for counsel's misadvising him "of alternatives to pleading." Petition at 5. In support of the ground, Petitioner states:

> Prior to advising Petitioner to plead, trial counsel failed to advise him of the availability to have a jury instructed on the "independent acts doctrine" which fit the circumstances of the case wholly. Had counsel so advised Petitioner of his right to this jury instruction, he would have proceeded to trial with this as a feature of the defense position rather than pleading to the charge.

Id.

Petitioner raised this claim in his motion for post conviction relief, and the trial court adjudicated the claim on the merits. In denying the claim, the trial court stated, in pertinent part:

> In ground one, Defendant alleges that counsel rendered ineffective assistance by failing to advise Defendant of the "independent acts" defense. Initially, this Court notes that the "independent acts" doctrine is not a defense but instead a jury instruction available at trial. The "independent acts" doctrine is defined as "when one co-felon, who previously participated in a common plan, does not participate in acts committed by his co-felon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So.2d 604, 609 (Fla. 2000); Thomas v. State, 787 So.2d 27 (Fla. 2d DCA 2001); Jones v. State, 804 So.2d

15

> 551 (Fla. 3d DCA 2002); McGee v. State, 792 So.2d 624 (Fla. 4th DCA 2001). This Court finds that the "independent acts" doctrine applies in situations where the co-felon was not actively participating in the criminal act. Thomas; McGee. In the instant Motion, Defendant admits that he and Love went to the victim's house and there was a disagreement. (Defendant's Motion, page 3.)[5] Defendant also admits to striking the victim several times. (Defendant's Motion, page 3.) This Court finds that the "independent acts" doctrine would not have applied in Defendant's case since Defendant was a willing participate [sic] in the events that day by striking the victim first. Ray.

Ex. B1 at 24-25.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, this claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown

---

[5] Petitioner states that he (accompanied by Tony Love, the co-perpetrator) went to the victim's residence to collect money owed to Petitioner from the victim. Ex. B1 at 3; D1 at 13-14. Petitioner admits that he and the victim argued about the debt and that Petitioner "believing that the victim was going for a weapon[,] picked up a bat and struck the victim in the side several times and dropped the bat." Id. Petitioner notes that Tony Love picked up the bat and struck the victim in the head. Id.

16

v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

After a full review of the record, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See also Response at 14.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. United States v. Freixas, 332 F.3d 1314, 1319 (11th Cir. 2003). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. Id. at 1319-20 (citations omitted). "Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high." Id. at 1319.

Here, counsel's performance was not deficient. Under the facts of this case, Petitioner was not entitled to a jury instruction on "independent act" based on Florida law. Ray v. State, 755 So.2d 604 (Fla 2000). Petitioner Carter was a willing and active participant in hitting the victim with a baseball bat, and his actions set his co-perpetrator's acts into motion. See

Pearce v. State, 880 So.2d 561 (Fla. 2004); Mills v. State, 875 So.2d 823 (Fla. 2nd DCA 2004).

At the October 2, 2000, plea proceeding, the prosecutor set forth the factual basis for the plea of nolo contendere:

> Your Honor, at trial the state would be prepared to show that on the 27th day of August, 1999, Duval County, Florida, the defendant, by act and particular, hitting the victim in the head with a baseball bat, brought about the death of the defendant – of the victim, without any justification. Without any cause, without any legal support for his position at all.
>
> The victim was taken to the hospital after the attack. He spent four days in intensive care and died of blunt trauma to the head.

Ex. A, Transcript of the Plea Proceeding at 8. Defense counsel stated that he would offer some mitigation at sentencing, but would not argue, for purposes of the plea, that the factual basis was inaccurate. Id. at 9. The trial judge found that there was a sufficient factual basis for the nolo contendere plea based on the recitation by the State and his review of the arrest docket in the case. Id.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Under the prejudice prong of the inquiry, Petitioner "must affirmatively prove prejudice by showing that counsel's errors actually had an adverse effect on the defense." United States v. Freixas, 332 F.3d at 1320 (quotation omitted). This showing requires "more than some

conceivable effect on the outcome of the proceeding." Id. (quotation omitted). If Petitioner had proceeded to trial, he faced first degree murder and armed robbery charges (Ex. A at 10). Instead, Petitioner entered a plea of nolo contendere to the lesser offense of manslaughter with the use of a weapon, and the State agreed to a thirty (30) year cap on imprisonment and agreed to drop the second charge (armed robbery). On November 2, 2000, Petitioner Carter was adjudicated and sentenced to thirty (30) years of imprisonment. This ineffectiveness claim is without merit.

Thus, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED,** and this case is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this  1ST.  day of June, 2005.

_Howell W. Melton_
UNITED STATES DISTRICT JUDGE